IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| **EARL LAWLESS,** | **PLAINTIFF,** |
| VS. | CIVIL ACTION NO. 1:05CV324-P-D |
| **UNITED STATES OF AMERICA, BY AND THROUGH THE DEPARTMENT OF VETERAN AFFAIRS; XYZ DRUG MANUFACTURER; AND DEFENDANTS A, B, C AND/OR ENTITIES UNKNOWN,** | **DEFENDANTS.** |

**MEMORANDUM OPINION**

This matter comes before the court upon the United States of America's Motion for Summary Judgment [40-1]. After due consideration of the motion and the responses thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

On April 30, 2003 Earl Lawless was seen at the VA Medical Center in Memphis, Tennessee for complaints of swollen lymph nodes, dyspnea, night sweats, and chest pain upon exertion. At that time he was prescribed a hypertension medication called Hydrochlorothiazide ("HCTZ").

On May 9, 2003 Lawless reported to the VA that he had lost his vision in both eyes ten minutes after taking the HCTZ. When the VA returned his call, Lawless reported that he remained blind after one hour. Some time later that day, Lawless went to an opthamologist in Tupelo named Leighton Pettis, M.D. Dr. Pettis called the VA to speak with a resident nurse whereupon he reported that Lawless had experienced three episodes of blindness with his vision returning after three to five

1

minutes. Dr. Pettis concluded that "this is most likely a vascular problem" and sent Lawless to the North Mississippi Medical Center ("NMMC").

On May 13, 2003 Lawless was discharged from the NMMC. According to the discharge summary, T. Ray Perrine, M.D., with George Housely, M.D. (Rheumatology) and David Doorenbos, MD. (Neurology) consulting, wrote that Lawless' admitting diagnosis was syncope and acute visual loss and his discharge diagnosis was orthostatic hypotension, rheumatoid arthritis, and hypertension.

According to another discharge summary written by Dr. Perrine on June 4, 2003, Lawless "states that another physician had recently started him on hydrochlorothiazide approximately 1 week prior to presentation. These were the only changes that had been done to any blood pressure medications recently. ... It was neurology and rheumatology's suggestion and [sic] the patient's symptoms are secondary to orthostatic hypotension."

Also on June 4, 2003 Dr. Perrine wrote a letter to whom it may concern in which he stated: "Mr. Earl Lawless experienced syncopal symtoms [sic] and was instructed by the VA in Memphis to go to his local ER for evaluation. He was subsequently admitted and cared for by myself and the FRMC [Family Regional Medical Center] team. After thorough evaluation it was felt he was experiencing orthostasis secondary to one of his medications, hydrochlorothiazide."

On July 2, 2003 Lawless filed an administrative claim with the Department of Heath and Human Services. After receiving his right-to-sue letter, Lawless filed a complaint in this court on December 7, 2005 in which he levies a medical negligence claim against the VA under the Federal Tort Claims Act. Although he names XYZ Drug Manufacturers and Defendants A, B, & C, he has never sought amendment to identify these fictitious defendants. In his complaint, Lawless alleges that the HCTZ prescribed to him on April 30, 2003 caused irreparable harm to his body. He alleges

that "Defendants should have ascertained the aforesaid injury which could result as a result of prescribing the mediation to Plaintiff in conjunction with his condition." Furthermore, "as a direct, immediate and proximate result of the acts of negligence on the part of the Defendants herein, Plaintiff, Earl Lawless, sustained a permanent loss and he still suffers physical pain and mental anguish as a result of said injuries." Though the complaint does not specifically set out the injuries, it ends with a demand for $5 million for actual and compensatory damages and $10 million for punitive damages.

In response to the Government's interrogatory number 7 which asked the plaintiff "to specify what 'irreparable harm' was caused to the Plaintiff by the prescription hydrochlorothiazide," the plaintiff answered: "Pulmonary respiratory damages, dyspnea, dehydration, shortness of breath, neurological disorders, both externally and internally. Evidence thereof has previously been provided." In response to interrogatory number 8, which asked Lawless to "specify how any alleged act of negligence ... directly and proximately caused the injuries," Lawless wrote: "One act, which was the issuance of a prescribed medication to which the Plaintiff was known to be allergic." When asked "how the VAMC failed to use reasonable prudence and proper care in their treatment of the Plaintiff," Lawless responded:

> The VAMC knew of the Plaintiff's previous problems with the medication and again, gave this to the Plaintiff without his knowledge although his medical history was known by the VA Medical Center and in fact, they had previously given him the same medication although it was also documented at that time that he was allergic to the same.

Most of the Government's interrogatories and requests for production of documents were framed in such a way that the answers were to also include specific expert opinions and the bases therefor. However, none of the plaintiff's responses included any such opinions or supporting bases.

In his Designation of Experts, Lawless lists eight physicians, all of whom are "expected to testify as to his treatment of the Plaintiff for injuries sustained as a result of erroneously prescribed medication. Medical records were previously provided with Plaintiff's Core Disclosures. Curriculum Vitae shall be supplemented." No such curricula vitae were forthcoming.

On December 8, 2006 the Government filed the instant motion for summary judgment. The Government argues that the plaintiff's claim must fail as a matter of law because he has not complied with Tennessee substantive law (given that the alleged negligence occurred in Tennessee) requiring expert opinion testimony as to the applicable standard of care, how the VA breached that standard of care, and how that breach proximately caused the alleged injuries. The Government points out that although Local Rule 26.1(A)(2)(f) requires that a treating physician need not submit a standard expert report, he is "required to provide the facts known and the opinions held by the treating physician(s) and a summary of the grounds therefor." The Government argues that the plaintiff has not complied with this requirement since he has not provided any expert summary of the grounds for the opinion that the HCTZ caused the plaintiff's injuries.

To his succinct response the plaintiff attached an affidavit of the ER physician at the NMMC that treated him after he was admitted to the hospital on May 9, 2003 and discharged on May 13, 2003. In this brief affidavit, Dr. Perrine states simply: "I have reviewed the medical records of Earl Lawless and hereby issue this, my preliminary opinion that the prescribed medication of Hydrochlorothiazide contributed to the injuries of Earl Lawless (requiring hospitalization in May 2003)." The latter phrase contained in the parenthetical was hand-written and initialed by Dr. Perrine. Nowhere in the response does the plaintiff address the Government's arguments that Tennessee statutory and case law require that he provide expert testimony regarding the applicable standard of

care, how the VA breached that standard of care, and how that breach proximately caused each of the injuries claimed by the plaintiff.

Also in to his response the plaintiff attaches his own affidavit wherein he alleges he was prescribed HCTZ by the VA on a prior occasion in 1997 and that he pursued a claim against the VA, thus constituting evidence of the VA's notice of the plaintiff's allergy to HCTZ.

The Government replied that there is no evidence that the plaintiff was ever prescribed HCTZ in 1997 or any other occasion prior to 2003. In fact, according to the declaration of the general attorney for the Department of Veteran Affairs, the plaintiff filed a claim for injuries caused by the prescription of Optipranolol. The Government points out that Optipranolol is an entirely different medication than HCTZ. Furthermore, it is undisputed that the medical records provided by the plaintiff confirm that the drug in question in 1997 was Optipranolol, and not HCTZ.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence

5

introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-

moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**2. Analysis**

The Government's liability under the Federal Tort Claims Act is to be determined by the law of the state in which the alleged negligence occurred. *Richards v. United States*, 369 U.S. 1, 9 (1962). Therefore, since the alleged acts in this case occurred in Tennessee, the substantive law of Tennessee applies.

To prevail on a medical negligence claim under Tennessee law, the plaintiff must present expert evidence establishing (1) an applicable standard of care, (2) that the defendant's conduct breached that standard of care, and (3) that the breach proximately caused each of the injuries that would not otherwise have occurred. T.C.A. § 29-26-115(a); *White v. Vanderbilt University*, 21 S.W.3d 215, 226 (Tenn. 1999).

Unless "the acts of negligence are so obvious that they come within the common knowledge of laypersons," expert proof of all elements of a medical negligence claim is statutorily required. *White*, 21 S.W.3d at 227 n.11. In this case, the nature of the alleged causation between HCTZ and the alleged injuries do not come within the common knowledge of laymen. Therefore, under Tennessee law, the plaintiff must submit expert proof of all elements of his claim. "Causation in fact is a matter of probability, not possibilities, and in a medical malpractice case, such must be shown

to a reasonable degree of certainty." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn. 1993).

Furthermore, as stated above, Local Rule 26.1(A)(2)(f) requires that a treating physician need not submit a standard expert report, but he is "required to provide the facts known and the opinions held by the treating physician(s) and a summary of the grounds therefor."

The only evidence submitted by the plaintiff of causation consists of three statements by Dr. Perrine. In his June 4, 2003 letter to whom it may concern, Dr. Perrine writes: "After thorough evaluation it was felt he was experiencing orthosis secondary to one of his medications, hydrochlorothiazide." In the discharge summary from the hospital written on the same day, Dr. Perrine writes: "It was neurology and rheumatology's suggestion and [sic] the patient's symptoms are secondary to orthostatic hypotension." In his affidavit, Dr. Perrine avers simply: "I have reviewed the medical records of Earl Lawless and hereby issue this, my preliminary opinion that the prescribed medication of Hydrochlorothiazide contributed to the injuries of Earl Lawless (requiring hospitalization in May 2003)."

The plaintiff has submitted no summary of the grounds supporting Dr. Perrine's opinion. There is no evidence whatsoever that the HCTZ caused any of the plaintiff's claimed injuries other than the orthostatic hypotension. Furthermore, it is undisputed that the plaintiff has no evidence that he was ever prescribed HCTZ on an occasion prior to 2003 – the 1997 incident to which he refers involved an entirely different medication. Thus, there is no evidence that the VA had prior knowledge of an alleged allergy to HCTZ.

### III. CONCLUSION

For the reasons discussed above, the plaintiff cannot establish the elements required for medical malpractice pursuant to Tennessee law. That is, the plaintiff has not complied with

Tennessee law requiring that he submit expert testimony of the applicable standard of care, how the defendant breached that standard of care, and how that breach proximately caused all of the plaintiff's alleged injuries to a reasonable degree of medical certainty.

The court concludes that the plaintiff has failed to demonstrate that the evidence creates a genuine issue of material fact necessitating a trial in this matter. Therefore, the plaintiff's claim fails as a matter of law. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of April 4, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE